# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

# NEW ORLEANS DIVISION

| | | |
|---|---|---|
| **LARRY NAQUIN, SR.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO.: 2:10-cv-04320** |
| **ELEVATING BOATS, LLC and TECHCRANE INTERNATIONAL, LLC** | * | **SECTION "J"** |
| | * | **DISTRICT JUDGE CARL BARBIER** |
| | * | **DIVISION "4"** |
| | * | **MAG. JUDGE KAREN WELLS ROBY** |

***********************************************************************

## DEFENDANT ELEVATING BOATS, L.L.C.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

**I.** **Background**

Elevating Boats, L.L.C. (hereinafter, "EBI") is a Louisiana limited liability company with its principal place of business in Houma, Louisiana. EBI essentially performs two primary functions through its various subsidiaries and related entities: (1) it designs, builds and sells lift boats and pedestal cranes for use in maritime commerce[1], i.e., manufacturing/sales work and, (2) it charters lift boats for use in the Gulf of Mexico[2], i.e., offshore work. All other functions are secondary and supportive of the primary businesses. For example, also EBI inspects, maintains

---

[1] See Exhibit 1, affidavit of Walter Cure.
[2] *Id*

- 1 -

and repairs the lift boats and cranes it has sold to third parties[3]. EBI also inspects, maintains and repairs the lift boats and cranes which it has constructed for its own use[4].

When EBI charters its vessels as part of its offshore work, it generally supplies charterers with a vessel captain and a deckhand[5]. These blue water seamen are directly employed by EBI to navigate the vessel[6]. When the vessels in EBI's fleet return to their home port at EBI's yard in Houma, Louisiana, they are routinely inspected, maintained and repaired by a set of shore-based engineers, mechanics, welders and supervisors, all employed by EBI[7].

Both of EBI's primary functions require lifting of equipment weighing many tons. For example, the tall and heavy legs upon which its jack-up vessels rise must be lifted into position alongside the vessel prior to installation[8]. In order to ensure adequate lifting power to fulfill all of its needs, EBI designed and constructed its own LC-400 pedestal crane, and installed it dockside in its Houma yard[9][10]. The crane was put into service in 1998[11]. The crane operated flawlessly until November 17, 2009.

On that date at approximately 1:00 p.m., Plaintiff, a licensed crane operator, used the LC-400 dockside crane to move a 30-ton test block from an eighteen-wheeler trailer onto the adjacent ground[12] (hereinafter, "the Move"). The purpose of the Move was to return the test block to its normal storage location[13]. The trailer and the test block were at all pertinent times located on

---

[3] *Id*
[4] *Id*
[5] See Exhibit 2, Excerpts of Deposition of Plaintiff, at pp. 75-76.
[6] See Exhibit 1.
[7] *Id.*
[8] *Id.*
[9] See Exhibit 1.
[10] See Exhibit 3, Photos
[11] Date is approximate as many records concerning its construction were lost in Hurricane Katrina.
[12] See Exhibit 2 at pp. 82-85.
[13] *Id.*

land[14]. The test block was intended to be placed upon the ground, and not aboard any vessel[15]. At all pertinent times, the boom of the LC-400 faced away from the dock and away from the waterway adjacent to EBI's facility[16]. The Move did not involve any vessel, let alone any vessel in navigation.

Just before completion of the Move, the crane's pedestal cracked and gave way. The crane fell away from the dock and into a large EBI building which housed some of its manufacturing equipment and personnel[17]. One EBI employee was killed, and others were injured. Once the crane began to fall, Plaintiff exited the cab and fell onto the ground below. He did not fall upon, nor sustain any injury aboard, any vessel[18].

Following the incident, EBI filed "Employer's First Report of Occupational Injury" with the Longshore District Office, notifying it of the accident[19]. Thereafter, EBI began paying and has continuously paid all of Plaintiff's medical bills related to the incident[20]. EBI also began paying and has continuously paid to Plaintiff Longshore Worker's Compensation in the amount of $1,628.24 per month[21]. Plaintiff has accepted, deposited and/or cashed all such payments and checks, without exception and without objection[22][23].

---

[14] *Id.*
[15] *Id*, See also Exhibit 3 for illustrative purposes.
[16] *Id*
[17] See Exhibit 3.
[18] See Exhibit 4, Plaintiff's response to Request for Admission No. 7
[19] See Exhibit 5, First Report of Injury.
[20] See Exhibit 4, Plaintiff's response to Request for Admission No. 10.
[21] See Exhibit 1. See also Exhibit 2 at p. 31.
[22] See Exhibit 4, Plaintiff's response to Request for Admission No. 8.
[23] While it is not dispositive of the question of whether [Plaintiff] was a Jones Act seaman, nonetheless the fact that [Plaintiff] has accepted LHWCA payments strengthens the inference that he was a longshoreman and not a seaman. *Wallace v. Integrity Staffing Servs.*, 2009 U.S. Dist. LEXIS 19036, 6-7 (E.D. La. Mar. 2, 2009)

Nevertheless, Plaintiff has filed this Jones Act suit against EBI alleging he is a blue water seaman entitled to the Act's protections. The allegation of seaman status is wholly without merit.

Plaintiff has been employed at EBI since January 10, 1997[24]. His job titles, in sequential order, were fitter/welder (1997, approximately 2 years)[25], new construction foreman (approximately 2000, approximately 5 years)[26], and repair supervisor (approximately 2005 through date of accident)[27]. His supervisor was Danny Naquin, a shore-based employee[28]. During his time at EBI, given an estimated 260 business days per year, Plaintiff worked a total of over 3,300 days at EBI[29]. He has testified he drove to EBI each morning and back home each nearly 100% of the time[30]. Plaintiff further testified that he actually worked offshore on an EBI vessel a maximum of forty-five (45) days out of approximately 3,300 total days of work (approximately 0.01%)[31]. Several of those days involved participation in Coast Guard sea trials[32] for newly constructed EBI vessels[33].

Plaintiff has never held a vessel captain's license nor navigated any EBI vessel[34]. He was never employed as a deckhand[35]. In the sixty (60) days prior to the crane collapse at issue,

---

[24] See Exhibit 2, p. 66.
[25] See Exhibit 2., p. 23
[26] See Exhibit 2, p. 23.
[27] See Exhibit 2, pp. 26-27
[28] See Exhibit 2, pp. 27-28
[29] See Exhibit 2, pp. 66-67.
[30] See Exhibit 2, pp. 67-68
[31] See Exhibit 2, p. 70.
[32] Vessels in sea trials are not vessels in navigation for purposes of Jones Act seaman status. *Williams v. Avondale Shipyards, Inc.*, 452 F.2d 955 (5th Cir.1971).
[33] See Exhibit 2, pp. 50-52
[34] See Exhibit 2, pp. 44-45.
[35] See Exhibit 2, p. 45.

Plaintiff never slept aboard an EBI vessel, never worked aboard an underway EBI vessel, and was never exposed to the perils of the sea[36].

It is anticipated Plaintiff will claim entitlement to the benefits of seaman status based upon the fact that he worked aboard jacked-up or moored EBI vessels dockside at its Houma yard[37]. EBI vessels are generally jacked-up to the water line or above it, and ingress/egress is established using gangways or "catwalks."[38] Only when vessels require repair to their pontoons[39] are they moored in a floating position[40]. In any event, the vast majority of Plaintiff's work on EBI vessels was performed when such vessels were stationary at EBI's dock; more specifically, all but the forty-five (45) days worked offshore out of 3,300 total days of work at EBI[41]. Plaintiff's work aboard the vessels consisted of inspection and repair of engines[42], cranes[43], and hulls[44], in addition to general maintenance and repair. Plaintiff admits that some sixty percent (60%) of the vessels he worked on dockside at EBI were not even capable of going out to sea at the time he worked on them[45].

In summary, Plaintiff has sued EBI under the Jones Act with respect to an accident which occurred on land, injuries sustained on land, involving a crane permanently attached to the ground, which was in the process of moving land-based equipment within EBI's yard. Plaintiff claims to have seaman status irrespective of the on-land situs and nature of this incident. The claim hinges upon this Court finding that his shore-based work, performed almost exclusively

---

[36] See Exhibit 2, p. 71.
[37] See Exhibit 2, p. 68-70
[38] See Exhibit 2, p.75.
[39] "Pontoons" are the "feet" of the jack-up vessel's legs. The pontoons on EBI vessels are accessible when the legs are jacked completely out of the water, and the vessel is in the floating position. See Exhibit 2 at p. 47.
[40] See Exhibit 6, Excerpts of Deposition of Walter Cure at pp. 18-19, 29-30.
[41] See Exhibit 2, pp. 69-70.
[42] See Exhibit 2, p. 117.
[43] See Exhibit 2, p. 73.
[44] See Exhibit 2, p. 72.
[45] See Exhibit 2, pp. 117-118.

upon stationary vessels in EBI's Houma yard (the majority of which were not capable of going to sea) is more like the work of a blue water seaman than that of a Longshoreman. Such a finding would be contrary to applicable law.

## II. Law and Argument

### A. *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (U.S. 1986) (citing Fed.R.Civ.P. 56(c)). The moving party may satisfy its summary judgment burden by showing that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See *id.* at 325, 106 S.Ct. at 2554; see also *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden, the nonmoving party must "go beyond the pleadings and designate specific facts in the record showing there is a genuine issue for trial." *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311-12 (5th Cir. 1999) (quoting *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047-48 (5th Cir. 1996)); see also *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The nonmoving party cannot "rest on the allegations in [the] complaint" or otherwise satisfy its burden with "unsubstantiated assertions" or conclusory allegations." *International Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991); *Lawrence*, 163 F.3d at 311-12 (quoting *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047-48 (5th Cir. 1996)).

When considering a motion for summary judgment, the court construes the evidence in a light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences from the underlying facts in that party's favor. *Hunt v. Rapides Healthcare Sys., L.L.C.*, 277 F.3d 757, 764 (5th Cir. 2001). Factual disputes are resolved in favor of the nonmoving party "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). A factual dispute will preclude a grant of summary judgment only if the nonmoving party presents evidence sufficient to permit a reasonable trier of fact to find in its favor. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

Summary judgment is also appropriate "against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). This is because the inability to prove an essential element renders all other facts immaterial, thus precluding the existence of any genuine issue of material fact. *Id.*

### B. *Seaman Status under the Jones Act*

This Honorable Court recently summarized the law regarding seaman status in *George v. Cal-Dive Int'l, Inc.*, 2010 U.S. Dist. LEXIS 66055 (E.D. La. July 1, 2010):

> The central issue in this case is whether Plaintiff can maintain a claim against his employer under the Jones Act, 46 U.S.C. § 30104. The determination of Jones Act seaman status is a mixed question of law and fact. *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554, 117 S.Ct. 1535, 1540, 137 L. Ed. 2d 800 (1997). As such, seaman status is typically a matter for a jury to decide. *Id.* Nevertheless, the Supreme Court has stated that summary judgment in this context "is mandated where the facts and the law will reasonably support only one conclusion." *Id.* (citing *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356, 111 S.Ct.

807, 818, 112 L. Ed. 2d 866 (1991); see also *Becker v. Tidewater, Inc.*, et al., 335 F.3d 376, 386 (5th Cir. 2003).

In pertinent part, the Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law . . . against the employer." 46 U.S.C. § 30104. A cause of action will not arise under the Jones Act unless the plaintiff is a "seaman." *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999). While the statute does not define the term "seaman," there is ample case law to elucidate the contours of exactly "which maritime workers are entitled to the special protections" of this remedial statute. *Chandris v. Latsis*, 515 U.S. 347, 355, 115 S.Ct. 2172, 2183, 132 L. Ed. 2d 314 (1995); see, e.g., *Papai*, 520 U.S. at 553, 117 S.Ct. at 1540; *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368 (5th Cir. 2001); *Brown v. Trinity Catering, Inc.*, No. 06-5756, 2007 U.S. Dist. LEXIS 90868, 2007 WL 4365384 (E.D. La. 2007).

Land-based maritime workers are not seaman and therefore have no claim for negligence under the Jones Act. *Hufnagel*, 182 F.3d at 346 (citing *Papai*, 520 U.S. 548, 117 S.Ct. 1535, 137 L. Ed. 2d 800 (1997). A land-based maritime worker's recourse against his employer lies with the Longshoremen and Harbor Workers' Compensation Act ("LHWCA"). *Becker v. Tidewater, Inc.*, et al., 335 F.3d 376, 387 (5th Cir. 2003) (citing 33 U.S.C. §§ 905, 907(a)). The Jones Act and the LHWCA are mutually exclusive remedial compensation schemes. *Id.* at 386. Thus, if Plaintiff satisfies the criteria for being a seaman, then he is covered by the Jones Act. If he does not, then his recourse is limited to the LHWCA. *Id.*

In *Chandris v. Latsis*, the United States Supreme Court implemented a two-pronged test to be used when evaluating Jones Act seaman status. See generally *Chandris*, 515 U.S. 347, 115 S. Ct. 2172, 132 L. Ed. 2d 314. The essential requirements are:

First . . . an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission; and

Second . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature.
*Chandris*, 515 U.S. at 367-70.

. . .

> Concerning the temporal prong, the Fifth Circuit quantified the duration necessary to allow submission of the issue of seaman status to a jury. A worker can satisfy the substantial duration component by demonstrating that 30 percent or more of his time is spent in the service of a particular vessel or fleet of vessels under common ownership or control. *Roberts*, 266 F.3d at 375-76; see also *Nunez v. B. & B. Dredging, Inc.*, 288 F.3d 271, 277 (5th Cir. 2002) (holding that because the plaintiff spent only approximately 10 percent of his work time aboard a vessel in navigation, he did not qualify for seaman status as a matter of law). The Supreme Court has endorsed this calculus as an "appropriate rule of thumb." *Chandris*, at 371, 115 S.Ct. at 2191. In affirming the validity of the 30 percent rule, the *Chandris* Court explicitly confirmed that "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* The 30 percent threshold also governs when an "identifiable group of vessels" in navigation is at issue, rather than just one particular vessel. See *Roberts*, 266 F.3d at 375 ("We have left no doubt that the 30 percent threshold for determining substantial temporal connection must be applied, regardless of whether one vessel or several are at issue.").

*Id* at 9-12.

### C. *Plaintiff Fails to Satisfy the <u>Chandris</u> Requirements*

Plaintiff is not a Jones Act seaman because he does not meet either of the formal prongs of the *Chandris* test, nor the 30% "rule of thumb."

The first prong of *Chandris*' seaman status test requires a showing that the employee's duties contributed to the function of the vessel or to the accomplishment of its mission. *Id.* With respect to this prong, which the Supreme Court noted is "very broad," a plaintiff need only show that he "does the ship's work." *Id.*; *Becker*, 335 F.3d at 388. "'All who work **at sea** in the service of a ship' are eligible for seaman status." *Chandris*, 515 U.S. at 368, 115 S. Ct. at 2190 (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 354, 111 S. Ct. 807, 817, 112 L. Ed.2d 866 (1991))(emphasis added). Plaintiff does not work at sea and does not do the ship's work.

While it is true the *Chandris* Court counseled against use of the "snapshot" test[46], it did not preclude the weighing of the facts as they existed at the time of the accident within a court's broader analysis of the totality of the circumstances. With respect to the first prong, Plaintiff is unable to look to the facts of the crane collapse for support. The duties performed by the Plaintiff at the time of the crane collapse did not contribute to any vessel or the accomplishment of any vessels' mission. The Plaintiff's undisputed testimony makes clear he was operating the LC-400 crane in order to return a 30-ton test weight to its normal storage position in EBI's yard. While it is true the 30-ton weight is used to test EBI's cranes, it was not in such use at the time of the collapse. It was merely being moved to storage. The placement of land-based heavy equipment in storage, on land, bears no relationship to any EBI vessel's function or mission.

Plaintiff's day-to-day duties consist of "EBI's work," and not any particular ship's work at sea. Plaintiff's daily responsibilities (including crane repair, hull repair, engine repair, and general maintenance) gave direct benefit only to EBI. The day-to-day work of the EBI captains and crew aboard chartered vessels, in contrast, directly benefit charterers' chosen missions; i.e., the "ship's work." To illustrate the difference, for example: to the extent a client chartered an EBI vessel to meet its needs for offshore transportation of a wire-line crew, it cannot be said Plaintiff's day-to-day work directly assisted with that vessel's mission any more so than the land-based secretary who ordered supplies for the voyage. *Chandris* does not contemplate the secretary as seaman because the secretary's work directly benefits EBI and has only indirect relation to the vessel's mission. The same is true of Plaintiff's job. His function was to ensure

---

[46] *Chandris, Inc. v. Latsis*, 515 U.S. 347, 363 (U.S. 1995) (In evaluating the employment-related connection of a maritime worker to a vessel in navigation, courts should not employ "a 'snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence.")

the vessels were adequately prepared to take on missions; not to directly support said missions. Thus, he fails to meet the first prong of the *Chandris* test.

Plaintiff likewise fails to meet the second prong of the *Chandris* test. His alleged connection to the EBI fleet of vessels is insubstantial in both its nature and duration. By his own admission, Plaintiff spent less than 0.01% of his employment at EBI working aboard a vessel in navigation; far below the U.S. Supreme Court's 30% rule of thumb. He admits he has never been employed as a captain or a deckhand. He has never navigated an EBI vessel. Prior to the accident at issue, he definitely had not been offshore in two months, and in all likelihood, it had been at least one year if not longer[47]. One simply cannot locate a single case from any jurisdiction supporting a finding of seaman status under these circumstances. Naturally, Plaintiff's aim will be to ignore these facts altogether and instead highlight Plaintiff's work aboard EBI vessels, ***dockside in EBI's Houma yard***.

It is undisputed Plaintiff regularly set foot aboard EBI vessels which were jacked-up or moored at EBI's facility. If this fact alone were sufficient to vest Plaintiff with Jones Act protection, then all stevedores would also qualify for seaman status in direct contravention of Fifth Circuit precedent[48]. The mutually exclusive Jones Act and Longshore regimes require a line-drawing exercise; one which this Honorable Court has already undertaken in a virtually identical case.

In *Saienni v. Capital Marine Supply, Inc.*, 2005 U.S. Dist. LEXIS 6928 (E.D. La. Apr. 18, 2005), this Honorable Court had occasion to review the purported seaman status of a plaintiff whose seaman credentials were significantly superior and whose job responsibilities were

---

[47] See Exhibit 2, p. 71 (indicating Plaintiff's last time offshore was in 2008 or earlier)
[48] See i.e., *Balfer v. Mayronne Mud & Chemical Co.*, 762 F.2d 432, 434 (5th Cir. La. 1985) ("loading and unloading of docked vessels [is] classic stevedoring work")

somewhat similar to those of Plaintiff herein. Saienni, a Coast Guard licensed engineer and member of a crew assigned to various vessels from 1986-1996, was reassigned to land-based work in 1996 and continued in that capacity before being laid off in 2003. While working for defendant therein, he allegedly sustained injuries in three separate incidents in 2001 and 2002. *Id* at 1-7. The record revealed that Saienni's daily duties consisted of "preventive maintenance, coordinating repairs, and performing actual mechanical and electrical repairs on the Ingram Defendants' vessels." *Id*. Saienni performed his maintenance and repair duties both in a land-based mechanic shop and aboard defendants' vessels which were located at either the defendant's fleeting facility or at off-site locations. The majority of the vessels upon which plaintiff performed his repair and maintenance duties were dockside at a shipyard; some of the vessels were moored at a location that required plaintiff to travel in a skiff to the vessel; and, about once every three months, plaintiff performed his work aboard a vessel which was underway at sea. *Id*.

After thoroughly summarizing applicable jurisprudence regarding every aspect of the seaman status inquiry, this Court stated:

> [T]he Court finds plaintiff has failed to come forward with any specific facts demonstrating that the nature of his work was anything other than land-based repair of the Ingram defendants' vessels. The undisputed facts in this case are (1) at the time of the alleged accidents, plaintiff was employed by the Ingram defendants as a shoreside mechanic operating out of a land-based fleeting facility and mechanic shop; (2) while performing his job duties, plaintiff's time was split between working at the fleeting facility in Reserve and traveling by car to service vessels at other locations; (3) of the 40 percent of plaintiff's total work time which was spent at the fleeting facility, half of that time (20 percent overall) was spent in the mechanic's shop; (4) when plaintiff's work duties were performed aboard vessels, the vessels were generally moored at a dock, shipyard or other stationary location; (5) while performing his work at off-site locations, when an overnight stay was required, plaintiff would spend his nights at motels and plaintiff could only recall one occasion when he slept

on one of the vessels; (6) while aboard the vessels, plaintiff did not serve as a deckhand, pilot or captain because the vessels had their own crews; (7) in plaintiff's capacity as a shoreside mechanic, plaintiff reported directly to a shore-based port engineer; and (8) plaintiff performed repairs aboard a vessel while it was underway only four times a year.

The Court finds that the totality of the circumstances would not permit a reasonable fact finder to conclude that plaintiff was a seaman. Although plaintiff may have performed work on the Ingram defendants' vessels, plaintiff's work was not of a seagoing nature. Plaintiff has submitted no evidence undercutting the Ingram defendants' contention that plaintiff's infrequent repair episodes aboard vessels while they were underway was anything other than a transitory or sporadic exposure to the perils of the sea. Plaintiff did not regularly eat or sleep aboard defendants' vessels and plaintiff's duties, although including on-board repairs of vessels, included managing the coordination of repairs for a group of vessels. Although none of the foregoing facts taken alone would automatically preclude seaman status, the Court finds that the aggregation of the circumstances of plaintiff's employment supports only the conclusion that plaintiff was a land-based maintenance and repair coordinator and worker who happened to be on a vessel when he was allegedly injured.

*Id* at 35-37.

Plaintiff's circumstances differ from Saienni's in that Saienni was licensed by the Coast Guard, was a member of the crew of a vessel for ten years, went to sea four times every year, and was injured aboard a vessel. Surely, if Saienni can set forth such facts and not be a seaman, the Plaintiff (who cannot) is likewise a Longshoreman.

### III. Conclusion

Plaintiff Larry Naquin, Sr. is not a seaman within the meaning of the Jones Act 46 U.S.C. § 30104. His sole remedy against Defendant Elevating Boats, L.L.C. is provided by the Longshoremen and Harbor Workers' Compensation Act. At all pertinent times, Defendant has satisfied and continues to satisfy the requirements of the LHWCA by providing medical care and

Longshore benefit payments to the Plaintiff. The Plaintiff has no other valid claims against Defendant and as such, this case should be dismissed with prejudice at Plaintiff's cost.

Respectfully Submitted:

*s/ Peter S. Koeppel*
CHET D. TRAYLOR (#12900)
ctraylor@koeppeltraylor.com
PETER S. KOEPPEL (# 1465)
peterklaw@aol.com
W. SCARTH CLARK (# 22993)
sclark@koeppeltraylor.com
**KOEPPEL TRAYLOR**
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Telecopier: (504)524-1024

And

LAURENCE E. BEST (#3012)
**LAURENCE E. BEST, LLC**
lebest@laurencebest.com
2030 St. Charles Avenue
New Orleans, LA 70130

*Attorneys for Elevating Boats, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 24th day of October, 2011 served the foregoing pleading on all counsel of record by faxing and/or placing a copy of same in the United States Mail, properly addressed and first class postage prepaid or by electronic means via the CM/ECF system.

*s/ Peter S. Koeppel*