UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LARRY NAQUIN, SR.                             CIVIL ACTION

VERSUS                                        NO: 10-4320

ELEVATING BOATS, LLC AND                      SECTION: J(4)
TECHCRANE INTERNATIONAL, LLC

## ORDER AND REASONS

Before the Court are Defendant Elevating Boats, L.L.C.'s **Motion for Summary Judgment (Rec. Doc. 40)** and Plaintiff Larry Naquin, Sr.'s **Memorandum in Opposition (Rec. Doc. 48).** Elevating Boats, LLC's Motion is before the Court with oral argument, which was heard on Wednesday, December 7, 2011, at 9:30 a.m.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

The facts of the case at bar are largely undisputed by the parties. Defendant Elevating Boats, L.L.C's ("EBI") designs and manufactures lift boats[1] and marine pedestal cranes for sale and use in maritime commerce. It also operates a fleet of lift boats for charter for offshore work in the Gulf of Mexico. In support of these operations, EBI also maintains a lift boat and pedestal crane inspection and repair facility in Houma, Louisiana, where Plaintiff Larry Naquin, Sr. worked.

Plaintiff has worked for EBI in various positions at the

---

[1] A lift boat is a self-elevating, self-propelled vessel usually equipped with at least one crane and an open deck.

1

Houma facility since January 10, 1997.  He was originally hired as a fitter/welder, where he primarily performed precision cutting in EBI's vessel fabrication building.  He held this position for approximately two years, at which time he was promoted to the role of construction foreman, where he oversaw the construction of lift boat hulls and managed a small team of EBI repair technicians, including welders, painters, electricians, and carpenters.

Shortly after Hurricane Katrina, he assumed the position of repair supervisor, which he held until the events giving rise to the instant lawsuit.  In his capacity as a repair supervisor, Plaintiff oversaw the repair of EBI lift boats and cranes, as well as those owned by other companies who brought them to EBI for repair or inspection.  He reported to EBI's yard supervisor, Danny Naquin.  Plaintiff often worked on board the vessels, which were usually either jacked up or moored at the EBI dock, depending on the specific repair required.  Plaintiff estimates that approximately half of the vessels requiring repair were jacked up out of the water, while the other half were moored.  While on board, Plaintiff performed inspections and repairs on various parts of EBI's vessels, including engines, hulls, and cranes.  At times, vessels needed to be repositioned at the dock in order to facilitate a repair, and Plaintiff noted that he was

on board these vessels as they were rearranged approximately two to three times per week.  In these circumstances, he also typically handled the ship's lines and tied the vessel off to secure it.  Additionally, Plaintiff, a licensed crane operator, sometimes operated the cranes on board the lift boats to load or unload heavy pieces of machinery or other materials from the dock.

Plaintiff also performed tasks traditionally assigned to the deckhands of EBI's fleet, including painting, fixing leaks, fixing cracks in the hull, chipping, and cleaning the vessels while they were stationed at the dock, as well as other routine maintenance.  Because this work often went undone while the vessel was offshore, Plaintiff assisted the ships' deckhands in their duties after the vessels were moored or jacked up at EBI's dock.  Plaintiff was additionally responsible for handling Coast Guard vessel inspections.  After receiving notice of an inspection, he prepared the vessel for inspection and personally walked through the vessels with the Coast Guard officials during the inspection.  In total, Plaintiff estimates that he spent seventy to seventy-five percent of his working time aboard vessels in its Houma dock, while approximately twenty-five percent of his hours were spent performing land-based work.

Finally, Plaintiff testifies that, at several times in his

employment, he actually "went to sea" on EBI vessels for various assignments.  For instance, he attended the sea trials for two of the newly constructed vessels in EBI's fleet, the JIMMY HOLMES and the MAMMOTH.[2]  The sea trial of the MAMMOTH occurred sometime in 2002, and the trial of the JIMMY HOLMES occurred after Hurricane Katrina in 2005, but Plaintiff was unable to recall the specific date.  Collectively, these trips were fairly brief, amounting to no more than five total days at sea.  In addition to the sea trials, Plaintiff operated the crane aboard the MAMMOTH at various jobsites in the Gulf during the period from 2004-2007, with each hitch lasting three to seven days and requiring him to sleep onboard the ship.  He estimates that he has slept aboard one of EBI's vessels at least seven to ten times.  In sum, he estimates that he has spent about forty to forty-five days working offshore during the tenure of his employment with EBI.

On November 17, 2009, Plaintiff was operating one of EBI's land-based cranes to move a thirty-ton test block from an eighteen-wheeler trailer to its normal storage location.[3]  Just before the move was completed,  the pedestal snapped, sending the

---

[2]  A sea trial is the operational testing of a new vessel to demonstrate its seaworthiness to a government official, typically from the Coast Guard.

[3]  Plaintiff testified that he spent ten percent of his time "at the very most" working on this dockside crane.

crane toppling to the ground and into an adjacent building. As a result of the accident, Plaintiff suffered injuries to both his left ankle and right heel, which required surgery. Shortly after the accident, EBI filed a report with the Longshore District Office notifying it of the incident and of Plaintiff's injuries. EBI thereafter began paying Plaintiff's medical bills related to the accident and has also paid Plaintiff Longshore Worker's Compensation benefits in the monthly amount of $1,628.24.

Plaintiff filed suit against EBI on November 15, 2010, asserting claims under the Jones Act, and in the alternative, reserving his claims and benefits under the Longshore and Harbor Workers Compensation Act. Plaintiff also sued Techcrane, International, L.L.C. ("Techcrane"), a company believed by Plaintiff to work with EBI to supply, design, and/or construct EBI cranes. On September 13, 2011, Techcrane filed a motion for summary judgment, which the Court subsequently granted. On October 24, 2011, EBI filed the instant Motion for Summary Judgment.

## PARTIES' ARGUMENTS

EBI argues that the undisputed facts show that Plaintiff is not a Jones Act seaman, but a Longshoreman, whose claims are barred as a matter of law by the Longshore and Harbor's Compensation Act, 33 U.S.C. § 901, *et seq*. It contends that Plaintiff's undisputed testimony regarding his employment duties

reveals that he does not meet either of the prongs of the Supreme Court's <u>Chandris</u> test for seaman status. Specifically, it argues that his duties did not "contribute to the function" of EBI's vessels or to the accomplishment of their missions, as required by the first prong of <u>Chandris</u>, because they related only to the general maintenance and repair of the vessels. It submits that this type of work bears only an indirect relationship to EBI's vessels' missions. With respect to the second prong of <u>Chandris</u>, which requires the employee to have a connection to a vessel in navigation that is substantial in duration and nature, EBI argues that Plaintiff has spent less than .01% of his employment at EBI working aboard vessels in navigation. Further, it notes that his work aboard EBI vessels occurred while the boats were stationary at EBI's Houma dock. It argues that this work is not of a "seagoing nature" and did not expose Plaintiff to the "perils of the sea." Finally, EBI points out that it has paid, and Plaintiff has accepted without objection, Longshore Worker's Compensation in the amount of $1,628.24 per month since the time of his accident. Thus, it argues that Plaintiff is conclusively not a seaman, and thus not entitled to bring claims under the Jones Act.

Plaintiff opposes Defendant's motion and has essentially argued that Defendant mis-characterizes the nature of his duties at EBI. He notes that his deposition testimony reveals that he

spent about seventy to seventy-five percent of his time on board
vessels, performed many of the same tasks actually performed by
deckhands, that he was on board moving EBI vessels at least two
to three times per week, that he worked with the Coast Guard
officials in the inspection of EBI's vessels.  Further, he adds
that he has actually spent time offshore aboard several EBI
vessels operating in the Gulf of Mexico.  In sum, drawing from
the same well of undisputed facts, Plaintiff argues that a
reasonably jury could conclude that he was a seaman based on the
totality of his job duties.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317,
322-23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075
(5th Cir. 1994).  A material fact is a fact which, under
applicable law, may alter the outcome of the suit. Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet
Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th
Cir. 2001).  A dispute is genuine when a reasonable finder of
fact could resolve the issue in favor of either party, based on
the evidence before it. Anderson, 477 U.S. at 250; TIG Ins. Co.

v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

When assessing whether a dispute as to any disputed issue of material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075.  A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d 399.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075; Isquith for and on Behalf of Isquith v. Middle South Utils., Inc., 847 F.2d 186, 198

8

(5th Cir. 1988), <u>cert. denied</u>, 488 U.S. 926 (1988).

## DISCUSSION

The Jones Act provides that "any seaman" injured in the course of his employment may maintain a civil action against his employer, with the right to trial by jury.  46 U.S.C. § 30104. Only a seaman may bring a claim under the Jones Act.  <u>Hufnagel v. Omega Serv. Indus., Inc.</u>, 182 F.3d 340, 346 (5th Cir. 1999).  A land-based maritime worker's recourse against his employer lies instead with the Longshoremen and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-50.  <u>Becker v. Tidewater, Inc., et al.</u>, 335 F.3d 376, 387 (5th Cir. 2003).[4]  These two compensation regimes are mutually exclusive.   <u>Id.</u> (citing <u>Harbor Tug and Barge Co. v. Papai</u>, 520 U.S. 548, 553 (1997)).  Because Plaintiff bears the burden of proof on seaman status, the dispositive issue with respect to the instant motion is whether Plaintiff has introduced evidence sufficient to support a finding that he is a seaman under the Jones Act.

The determination of seaman status under the Jones Act is a

---

[4]  Those individuals covered by the LHWCA include any longshoremen or other persons engaged in longshoring operations, as well as harbor-workers, including ship repairmen, shipbuilders, and ship-breakers. 33 U.S.C. § 902(3).

mixed question of fact and law.  It is usually inappropriate to take this question from the jury.  Id. at 386.  Nonetheless, where the facts and law reasonably support only one conclusion, summary judgment on this issue is  proper.  Harbor Tug, 520 U.S. at 554. If reasonable minds could reach differing conclusions on whether the employee was "a member of a crew," however, the question must be left to the jury.  Roberts v. Cardinal Servs, Inc., 266 F.3d 368, 373 (5th Cir. 2001)(quoting McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356 (1991)).

Congress did not define the term "seaman" when it enacted the Jones Act in 1920.  Thus, the courts were relegated the difficult task of defining the class of maritime workers entitled to the special protections of the Jones Act.  In Chandris v. Latsis, 515 U.S. 347 (1995), the United States Supreme Court articulated a succinct two-pronged test to aid in this determination.  In order to qualify for seaman status under Chandris, a plaintiff must show (1) that his duties "contribute[d] to the function of the vessel or to the accomplishment of its mission;" and (2) that he has "a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature." Id. at 376.

A.  **The First Chandris Prong:**

Both the Supreme Court and the Fifth Circuit have recognized that satisfying the first prong of Chandris is not an overly

10

difficult task:  the plaintiff need only show that he "does the ship's work."  Id. at 368; Becker, 335 F.3d at 387-88.  This threshold requirement is "very broad" and inclusive.  Chandris, 515 U.S. at 368.  It is not necessary for the purposes of satisfying this requirement that the plaintiff actually aid in the navigation or transportation functions of the vessel.  Wilander, 498 U.S. at 346.

Nonetheless, Defendant disputes that Plaintiff satisfies the first Chandris prong.  It relies on language from the Chandris opinion which states that "'[a]ll who work at sea in the service of a ship' are eligible for seaman status." Chandris, 515 U.S. at 368 (quoting Wilander, 498 U.S. at 354)(emphasis added).  Defendant urges that Plaintiff does not actually work "at sea" and does not do "the ship's work"  Instead, it argues Plaintiff only does "EBI's work."  It compares Plaintiff's job duties to that of a secretary in EBI's offices, both of which only indirectly contribute to the function of EBI's vessels or the accomplishment of their missions.

Defendant's arguments are unconvincing.  In elaborating on the breadth of the first prong of Chandris, the Court did not mean to state that only those who work "at sea" are eligible for seaman status.  Indeed, the Fifth Circuit has expressly rejected determinations of seaman status based solely upon wether an employee's duties actually took him to sea.  See In re Endeavor Marine Inc., 234 F.3d 287, 291 (5th Cir. 2000)("This application of

the 'going to sea' test has an intuitive appeal, but we do not believe that the Supreme Court intended to create such a singular rule for determining seaman status."); see also Mudrick v. Cross Equipment Ltd., 250 Fed. App'x. 54, 59 (5th Cir. 2007)(citing In re Endeavor Marine Inc. and explaining that "hours worked by a maritime employee aboard a vessel need not be hours spent at sea for the employee to qualify as a Jones Act seaman").  In any case, Plaintiff has also produced evidence that he actually has worked "at sea" at various times during his employment, albeit infrequently.

Defendant's second argument that Plaintiff did not do "the ship's work" is also without merit.[5]  Although Plaintiff failed to cite any case law in its opposition, the Court's research reveals that other courts have found that even land-based maintenance and repair work aboard a fleet of vessels contributes to the function of a fleet of vessels.  See, e.g., Saienni v. Capital Marine Supply, Inc., No. 03-2509, 2005 WL 940558, at *4 (E.D. La. Apr. 11, 2005)(shore-side mechanic who provided repair and maintenance services for his employer's fleet of barges contributed to the vessels' function and the accomplishment of their missions); Richard v. Mike Hooks, Inc., 2001-0145, p. 5 (La. 10/16/01); 799

---

[5]  Indeed, at oral argument, Defendant conceded that Plaintiff's service likely contributed to the function of EBI's vessels.

So.2d 462, 466 (welder helper who performed maintenance and repair work on board his employer's vessels while  they were docked satisfied first <u>Chandris</u> prong); <u>Peterson v. Reinauer Transp. Co., Inc.</u>, No. 94 Civ. 1851, 1997 WL 706220, at *4 (S.D.N.Y. Nov. 12, 1997)(employee who repaired air conditioning units on vessels moored at pier contributed to their function).   Furthermore, Defendant does not address the fact that Plaintiff performed deckhand duties aboard EBI's vessels, including tying off the vessels as they were being moored, painting, fixing leaks, fixing cracks in the hull, chipping, and cleaning.[6]   Plaintiff also testified that he personally assisted in securing the equipment required for EBI's vessels and crew to complete their offshore work.   A jury could reasonably conclude that these duties contributed to the function of EBI's vessels.   Accordingly, the Court finds that Plaintiff has introduced sufficient evidence to withstand summary judgment on the first prong of <u>Chandris</u>.

### A.  The Second <u>Chandris</u> Prong:

The second <u>Chandris</u> prong, however, presents a more exacting requirement. In order to satisfy this requirement, a plaintiff must show that he has "a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature." <u>Chandris</u>, 515 U.S. at 376.   This

---

[6] <u>See</u> Rec. Doc. 48-1, p.117-122.

test is conjunctive, requiring the employee's connection to a vessel to be "substantial in both respects." Id. at 370-71. The purpose of the second Chandris prong is "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation." Id. at 368. Seaman status is not a function of where the employee's injury occurred,[7] the particular work being performed when the injury was sustained,[8] or the injured employee's job title.[9] Instead, what matters is "the nature of the seaman's service, his status as a member of the vessel, and his relationship as such to the vessel and its operation in navigable waters." Id. at 359-60 (quoting Swanson v. Marra Brothers, Inc., 328 U.S. 1, 4 (1946). Courts must examine

---

[7] See id. at 361 ("Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore.").

[8] See id. at 368 ("[A] worker may not oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured.").

[9] See Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 89 (1991)("It is not the employee's particular job that is determinative, but the employee's connection to a vessel."); see also Soloqub v. City of New York, 202 F.3d 175, 181 (2d Cir. 2000) ("That the City classified as 'deckhands' those assigned to terminal duties does not convert a land-based employee to a seaman."). Thus, "even a ship repairman (which is traditional longshoreman work and is one of the enumerated occupations under the LHWCA) may qualify for seaman status if he has the requisite employment-related connection to the vessel." In re Endeavor Marine, 234 F.3d at 291 (internal citations omitted).

the "total circumstances of an individual's employment" in order to determine "whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." Id. at 369.

Two years after Chandris was decided, the Supreme Court in Harbor Tug explained that, in deciding the question of seaman status, courts should "concentrate on whether the employee's duties take him to sea." 520 U.S. at 555. This does not mean, of course, that the employee's duties must *literally* take him to sea. Instead, as the Fifth Circuit has clarified, this pronouncement is more properly understood as a "shorthand way of saying that the employee's connection to the vessel regularly exposes him to the perils of the sea." In re Endeavor Marine, 234 F.3d at 291. In short, the Harbor Tug "going to sea" language is merely a reformulation of the longstanding principle that "[t]he Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to 'the special hazards and disadvantages to which they who go down to sea in ships are subjected.'" Id. at 292 (quoting Seas Shipping Co. v. Sieracki, 328 U.S. 85, 104 (1946)(Stone, C.J., dissenting)).

With respect to the durational component of the second Chandris prong, the Fifth Circuit has established an "appropriate rule of thumb" for determining whether an employee possesses the required substantial connection to a vessel in navigation.

15

Ordinarily, if a worker spends less than thirty percent of his time in service of a vessel, he should not qualify for seaman status. See Becker, 335 F.3d at 388-89.  The same rule applies in cases involving an identifiable fleet of vessels, such as the instant case, as opposed to an individual vessel.  See Roberts v. Cardinal Servs., Inc., 266 F.3d 368, 377 (5th Cir. 2001)(explaining that "when a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his defendant-employer's common ownership or control.").

Defendant first argues that Plaintiff cannot establish that he can satisfies the Fifth Circuit's thirty percent benchmark because his testimony reflects that 0.01% of his work hours were spent aboard a vessel in navigation.  Defendant assumes, however, that the only time its vessels were "in navigation" was when they were actually sailing or performing work offshore in the Gulf.  This assumption finds no support in existing caselaw.  Indeed, the Supreme Court has noted that a vessel is generally still considered to be "in navigation" for the purposes of seaman status even when it is temporarily moored and undergoing repairs.  Id. at 373-74; see also Legros v. Panther Servs. Group, Inc., 863 F.2d 345, 352 (5th Cir.1988)(quoting McDermott, Inc. v. Boudreaux, 679 F.2d 452, 455 (5th Cir. 1982)("A vessel may be 'in navigation,' and the plaintiff working on it a seaman rather than a harbor-worker,

16

'although [the vessel is] moored to a pier, in a repair yard for periodic repairs, or temporarily attached to some object.'"). Plaintiff has testified that he spent approximately 70% of his time working aboard vessels, all but one or two of which were owned and operated by EBI.[10]   As a result, the Court cannot conclude that Plaintiff is not a seaman based solely on this fact.

The fact that Plaintiff may have spent more than thirty percent of his working time aboard vessels, however, does not end the inquiry, as this alone is not sufficient to raise a triable factual issue regarding seaman status.  As is often the case with respect to the questions of seaman status, the dispositive issue in this case is whether the *nature* of Plaintiff's employment demonstrates a substantial connection to the fleet of Defendant's vessels.  Here, EBI argues that Plaintiff was primarily a shore-based employee whose duties did little to expose him to the perils of the sea.  While it acknowledges that Plaintiff regularly worked aboard EBI's vessels while they were moored or jacked up at EBI's facility, Defendant argues that if this alone were sufficient to vest Plaintiff with Jones Act protection, then virtually any stevedore would also be eligible for seaman status.

In support of its argument, Defendant relies heavily on the case of <u>Saienni v. Capital Marine Supply, Inc.</u>, No. 03-2509, 2005 WL 940558 (E.D. La. Apr. 11, 2005).  In <u>Saienni</u>, the plaintiff's

---

[10] Rec. Doc. 48-1, p. 121.

duties consisted of "preventive maintenance, coordinating repairs, and performing actual mechanical and electrical repairs" on the defendant's fleet of vessels.  Id. at *1.  While most of the plaintiff's working hours were spent on land, he also performed a significant amount of repair work aboard vessels moored at the defendant's fleeting facility.  When a vessel was stationed elsewhere, the plaintiff traveled by skiff to the vessel, and about once every three months, the plaintiff performed repair work aboard a vessel underway in the Gulf.  Id.  The employer moved for summary judgment on the issue of seaman status, and the court granted the motion, finding that the totality of plaintiff's employment revealed that his work was not "of a seagoing nature."  Id. at *11.

While Plaintiff's employment as a repair supervisor is in some ways similar to those of the plaintiff in Saienni, they are not identical.  While the plaintiff in Saienni performed only traditional repair work, here, a substantial part of Plaintiff's work involved deckhand duties, such as painting, repairing leaks, engine maintenance, fixing cracks in the hulls of the vessels, chipping, and cleaning the vessels, as well as other routine maintenance activities.  These duties are more closely akin to the duties of a seaman than a land-based ship repairman.  Furthermore, Plaintiff also testified that he routinely assisted in moving the ships in the canal directly adjacent to the EBI facility in Houma. When a vessel needed to be moved, Plaintiff boarded the vessel,

18

pushed off the gangplank, and handled the ship's lines and tied it off to secure it once it had been moved to the proper location. Other courts have found the performance of such duties sufficient to preclude summary judgment on the issue of seaman status, even when the vessels' movement is limited to the waters directly adjacent to a docking facility.

In <u>Scheuring v. Traylor Bros., Inc.</u>, 476 F.3d 781 (9th Cir. 2007), for example, the Ninth Circuit considered whether an employee who worked primarily as a crane operator aboard a moored barge satisfied the second prong of <u>Chandris</u>. In reversing the district court's order granting summary judgment to the defendant employer, the court noted that the employee had performed what could be classified as "sea-based" duties, such as handling the ship's lines and standing lookout, while the ship was being repositioned for construction work in the waters adjacent to the construction site. <u>Id.</u> at 787. Even though the barge's movement was "relatively minor and infrequent," the Court explained that this evidence was sufficient to raise a triable issue of fact on whether the plaintiff's employment was land-based or sea-based. <u>Id.</u>

Similarly, in <u>Phillips v. Tidewater Barge Lines</u>, No. CV-05-1157-ST, 2006 WL 1724542 (D. Or. Mar. 21, 2006), a tankerman, who managed the transfer of petroleum and other liquid chemical products to and from his employer's barges, was injured while

working on board a moored barge.  The employer moved for summary judgment on seaman status, and relying on Saienni, argued that the injured employee was essentially a land-based maritime employee whose job duties were those of a quintessential longshoreman.  The court denied the employer's motion, finding that although most of the employee's work could be classified as land-based, he also "routinely performed deckhand duties when assisting in the mooring of the barges."  Id. at *8; see also Cavazzo v. Gray Ins. Co., 08-1407, (La. App. 3 Cir. 6/3/09), 15 So. 3d 1105, 1110-11 (affirming trial court's judgment that employee was a seaman as a matter of law when he primarily unloaded barges, but also performed routine vessel maintenance, and assisted in "flipping" the vessels for loading at the harbor facility).

Here, the Court finds the totality of Plaintiff's duties distinguishable from those of the plaintiff in Saienni, and based on the authority cited above, sufficient to raise a triable issue of fact as to whether Plaintiff satisfies the second Chandris prong.[11]  The nature of Plaintiff's employment falls somewhere

---

[11]  The Court is mindful of the Fifth Circuit's guidance that summary judgment on the question of seaman status is proper in only rare circumstances, and that even marginal claims should be left to the jury's determination.  See Bernard v. Binnings Const. Co., Inc., 741 F.2d 824, 827 (5th Cir. 1984) (citing Leonard v. Exxon Corp., 581 F.2d 522 (5th Cir.1978) ("[S]ubmission of Jones act claims to a jury requires a very low evidentiary threshold; even marginal claims are properly left for jury determination.").

between the dichotomous extremes of a land-based longshoreman and a Jones Act seaman, where reasonable minds could draw different conclusions.  Because a jury could reasonably conclude that Plaintiff's work contributed to the mission of EBI's vessels, and that his connection to EBI's fleet was substantial in terms of both its duration and nature, summary judgment is improper.

Accordingly, **IT IS ORDERED** that Defendant Elevating Boats, L.L.C.'s **Motion for Summary Judgment (Rec. Doc. 40)** is **DENIED**.

New Orleans, Louisiana this 3rd day of January, 2012.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

21