UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LARRY NAQUIN, SR.                          CIVIL ACTION

VERSUS                                     NO: 10-4320

ELEVATING BOATS, LLC AND                   SECTION: J(4)
TECHCRANE INTERNATIONAL, LLC


## ORDER AND REASONS

Before the Court are Defendant Elevating Boats, L.L.C.'s
**Motion *in Limine* Regarding Plaintiff's Experts, G. Randolph Rice,
Dana W. Davis, and Geoff Webster (Rec. Doc. 58)**, Plaintiff Larry
Naquin, Sr.'s **Memorandum in Opposition (Rec. Doc. 63)**, and
Defendant's **Reply Memorandum (Rec. Doc. 68)**.  The motion is
before the Court on supporting memoranda, and without oral
argument.

### FACTUAL BACKGROUND

Defendant Elevating Boats, L.L.C. designs and manufactures
lift boats and marine pedestal cranes for sale and use in
maritime commerce.  It also operates a fleet of lift boats for
charter for offshore work in the Gulf of Mexico.  In support of
these operations, Defendant also maintains a lift boat and
pedestal crane inspection and repair facility in Houma,
Louisiana, where Plaintiff Larry Naquin, Sr. worked.

On November 17, 2009, Plaintiff was operating one of
Defendant's land-based cranes to move a thirty-ton test block

from an eighteen-wheeler trailer to its normal storage location. Just before the move was completed, the pedestal snapped, sending the crane toppling to the ground and into an adjacent building. As a result of the accident, Plaintiff suffered injuries to both his left ankle and right heel, which required surgical repair. Shortly after the accident, Defendant filed a report with the Longshore District Office notifying it of the incident and of Plaintiff's injuries. Defendant subsequently began paying Plaintiff's medical bills related to the accident and has also reportedly paid Plaintiff Longshore Worker's Compensation Act benefits in the monthly amount of $1,628.24.

Plaintiff filed suit against his employer on November 15, 2010, asserting claims under the Jones Act, and in the alternative, reserving his claims and benefits under the Longshore and Harbor Workers Compensation Act. Plaintiff also sued Techcrane, International, L.L.C. ("Techcrane"), a company Plaintiff believed potentially supplied, designed, and/or constructed the cranes owned by his employer. On September 13, 2011, Techcrane filed a motion for summary judgment, which the Court subsequently granted. On October 24, 2011, Defendant filed a motion for summary judgment, asserting that Plaintiff was not a seaman as a matter of law. The Court denied the motion, reserving the question of seaman status for the determination of the jury. With the trial of this matter scheduled to commence on

Monday, May 14, 2012, Defendant has filed the instant motion *in limine*.

**PARTIES' ARGUMENTS**

Defendant's motion seeks an order excluding or otherwise limiting the testimony of three of Plaintiff's designated experts: Dr. G. Randolph Rice, Dana W. Davis, and Geoff Webster.

G. Randolph Rice, Ph.D., is Plaintiff's economist who was retained to provide expert testimony concerning the present day value of Plaintiff's past and future lost wages as a result of his injury and subsequent occupational restrictions. Defendant seeks to exclude Dr. Rice from testifying on two subjects: (1) his calculation of the value of Plaintiff's future lost wages based on the assumption that he would have worked until 70 years of age; and (2) the value of past and future meals alleged to have been provided to Plaintiff as a "fringe benefit" of his employment.

First, with regards to Plaintiff's future lost wages, Defendant contends that Dr. Rice's testimony is not based on "reliable methodology" as required under the first <u>Daubert</u> prong. Dr. Rice initially submitted an expert report on May 11, 2011, containing a calculation of Plaintiff's future lost wages based on the work-life expectancy provided by the U.S. Department of Labor Statistics, which is 64. On July 14, 2011, Dr. Rice apparently issued an addendum to his report in which he expresses

his opinion on the value of Plaintiff's future lost wages if he worked to age 70, as opposed to age 64. While Defendant does not object to the first report, it does object to the addendum, arguing that the calculation is based solely on an assumption that Plaintiff could have worked until age 70. Second, with respect to the valuation of past and future meals Plaintiff would have received at work, Defendant argues that Dr. Rice's calculations are based on Plaintiff's counsel's representation, and not on any data. To the contrary, it argues that there is no evidence in the record that meals were ever supplied to Plaintiff as part of his employment.

Dana W. Davis is a licensed social worker with a masters degree in social work. In the weeks following the crane accident at issue in this case, Defendant arranged for Ms. Davis to provide counseling services to several of its employees, including Plaintiff. She has reportedly seen Plaintiff over 43 times since the accident and will reportedly offer expert testimony that, in her opinion, Plaintiff suffers from post-traumatic stress disorder ("PTSD") as a result of the crane accident at issue in this case.[1] Defendant objects to this

---

[1] The Court notes that there has apparently been some confusion as to Ms. Davis's qualifications and the testimony she will offer. The parties' Proposed Pretrial Order incorrectly identifies Ms. Davis as a medical doctor and states that she will offer "[e]xpert testimony concerning medical treatment provided to plaintiff including interpretation of all films, current and future medical restrictions, past medical surgeries, need for

opinion.  It points out that Ms. Davis is not a medical doctor
and thus argues that she is unqualified to render a diagnosis or
any opinion on the medical cause of Plaintiff's alleged PTSD.
Defendant also argues that the evidence shows that Ms. Davis did
not consider Plaintiff's medical history in rendering her
diagnosis, because she only obtained an oral medical history from
Plaintiff himself.  It therefore argues that Ms. Davis's
testimony lacks the reliability required under the first <u>Daubert</u>
prong and should be excluded.  Finally, even if the Court finds
Ms. Davis's testimony sufficiently reliable, Defendant argues
that it should nonetheless be excluded because it will not assist
the jury in understanding or determining any fact at issue.
Because Plaintiff will presumably testify as to his feelings and
mental state after the accident, Defendant argues that Ms.
Davis's testimony is not helpful and merely cumulative.

Geoff Webster is reportedly proffered as a "safety expert"
to provide expert testimony concerning all issues of negligence,
liability, dangerous acts, and the standard of care in the
industry.  Defendant seeks to exclude Mr. Webster from testifying
at trial, arguing that an expert report for Mr. Webster has never
been produced and that his testimony constitutes an impermissible
legal opinion.  As such, it submits that the Court should

---

future medical surgeries, cost for past and future medical
expenses, and any other relevant medical issue concerning
plaintiff's medical treatment or physical condition."  <u>See</u> Rec.
Doc. 77, p. 20, ¶ 20.

preclude Mr. Webster from testifying.

Plaintiff opposes Defendant's motion, in part.  As a preliminary matter, Plaintiff does not oppose Defendant's request to exclude the testimony of Geoff Webster.  Next, Plaintiff argues that Dr. Rice should not be prevented from testifying concerning the valuation of Plaintiff's lost wages.  He notes that the duration of his work life expectancy is a question of fact to be decided by the jury.  Plaintiff further asserts that testimony will be adduced at trial showing his expected ability to work past the average work life expectancy.  As such, at a minimum, Plaintiff urges the Court to defer ruling on Defendant's motion in this regard until trial.  However, Plaintiff does not oppose Defendant's request to exclude Dr. Rice's testimony regarding past and future valuation of meals alleged to have been provided to Plaintiff as part of his compensation.

Finally, Plaintiff opposes Defendant's request to exclude Dana Davis from testifying.  He argues that Ms. Davis is abundantly qualified to render a PTSD diagnosis and to opine as to the cause for the condition in light of her academic training and practical experience.  He points out that Ms. Davis is a licensed and board-approved clinical social worker and clinical supervisor in the state of Louisiana; that she possesses a bachelor's degree in psychology and a masters degree in social work, both from Louisiana State University; that she is a certified bereavement facilitator; that she has received advanced

clinical training in Critical Incident Stress Debriefing; that
she is currently being certified in Trauma-Based Cognitive
Behavioral Therapy; and that she has worked in the field for
approximately 18 years.  Plaintiff further points out that Ms.
Davis has been previously offered and accepted as an expert
witness regarding PTSD approximately 20 times in other judicial
proceedings.  Finally, Plaintiff argues that Defendant obviously
deemed Ms. Davis qualified to treat him for his mental and
psychological distress when it arranged for her to provide
counseling and treatment in the weeks following the crane
accident.  He argues that its sudden reversal with respect to her
qualifications is unjust and prejudicial at this late hour.
Accordingly, if the Court is hesitant to allow her testimony,
Plaintiff requests that he be allowed sufficient time to employ a
new psychiatrist or psychologist regarding his PTSD.

In reply, Defendant submits that Plaintiff mischaracterizes
its arguments with respect to Dr. Rice.  It acknowledges that
Plaintiff's work life expectancy is a factual question and that a
jury is not precluded from awarding damages past the age of 64,
which is the work life expectancy provided by the U.S. Department
of Labor Statistics.  However, it argues that Dr. Rice's
calculations are based on the mere assumption, lacking any
factual or evidentiary support, that Plaintiff would work until
the age of 70.  In the absence of some objective evidence that
Plaintiff would have worked until that age, as opposed to the age

provided by the statistically backed age provided by the U.S. Department of Labor Statistics, Defendant argues that Dr. Rice's testimony must be excluded.

Defendant next reiterates its argument that Dana Davis is not qualified to offer expert testimony regarding Plaintiff's supposed PTSD, citing Louisiana statutes which provide that social workers are not authorized to engage in the practice of psychology, which is defined to include "diagnosis and treatment of mental and emotional disorder or disability" and "the psychological aspects of physical illness, accident, injury, or disability."  See La. Rev. Stat. § 37:2703(15)(b); La. Rev. Stat. § 37:2352(5).  Defendant further points out that Ms. Davis has only been qualified to testify in state court criminal proceedings involving child abuse or molestation – not in federal court or in any civil proceeding.  As such, it argues that the Court should exclude Ms. Davis's testimony and should not entertain Plaintiff's last-minute request for leave to obtain an additional expert psychiatrist.

**LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony.  The rule states:

> If scientific, technical, or other specialized knowledge
> will assist the trier of fact to understand the evidence
> or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion

or otherwise, if (1) the testimony is based upon
sufficient facts or data, (2) the testimony is the
product of reliable principles and methods, and (3) the
witness has applied the principles and methods reliably
to the facts of the case.

FED. R. EVID. 702.

The United States Supreme Court's decision in <u>Daubert v.
Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), provides
the analytical framework for determining whether expert testimony
is admissible under Rule 702. Both scientific and nonscientific
expert testimony are subject to the <u>Daubert</u> framework, which
requires trial courts to make a preliminary assessment of
"whether the expert testimony is both reliable and relevant."
<u>Burleson v. Tex. Dep't of Criminal Justice</u>, 393 F.3d 577, 584
(5th Cir. 2004); <u>see also</u> <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526
U.S. 137, 147 (1999). When expert testimony is challenged under
<u>Daubert</u>, the party offering the expert's testimony bears the
burden of proving its reliability and relevance by a
preponderance of the evidence. <u>Moore v. Ashland Chem. Co., Inc.</u>,
151 F.3d 269, 276 (5th Cir. 1998).

"Reliability is determined by assessing whether the
reasoning or methodology underlying the testimony is
scientifically valid." <u>Knight v. Kirby Inland Marine Inc.</u>, 482
F.3d 347, 352 (5th Cir. 2007). A number of nonexclusive factors
may be relevant to the reliability analysis, including: (1)
whether the technique at issue has been tested, (2) whether the

9

technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. Burleson, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every Daubert factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." Guy v. Crown Equip. Corp., 394 F.3d 320, 325 (5th Cir. 2004); see also Runnels v. Tex. Children's Hosp. Select Plan, 167 F. App'x. 377, 381 (5th Cir. 2006) ("A trial judge has considerable leeway in determining how to test an expert's reliability.") (internal citations and quotations omitted).

With respect to the relevancy prong, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." Bocanegra v. Vicmar Servs., Inc., 320 F.3d 581, 584 (5th Cir. 2003). Ultimately, the Court should not allow its "gatekeeper" role to supersede the traditional adversary system, or the jury's place within that system. Scordill v. Louisville Ladder Group, L.L.C., No. 02-2565, 2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003). As the Daubert court noted, "vigorous cross-examination, presentation of

contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Daubert</u>, 509 U.S. at 596. As a general rule, questions relating to the basis and sources of an expert's opinion rather than its admissibility should be left for the jury's consideration. <u>United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss.</u>, 80 F.3d 1074, 1077 (5th Cir. 1996) (citing <u>Viterbo v. Dow Chem. Co.</u>, 826 F.2d 420, 422 (5th Cir. 1987)).

## DISCUSSION

### A. Dr. G. Randolph Rice

Defendant argues that the proffered testimony of Dr. Rice calculating Plaintiff's future lost wages based on a work life expectancy of age 70 is not based on "reliable methodology" as required under the first <u>Daubert</u> prong. In <u>Culver v. Slater Boat Co.</u>, 722 F.2d 114 (5th Cir. 1983) (en banc), the Fifth Circuit set forth an approved methodology for determining future lost wage calculations in maritime cases. The four-step process established by <u>Culver</u> requires (1) estimation of the loss of work life resulting from the plaintiff's injury; (2) calculation of the plaintiff's lost income stream; (3) computation of the total amount of damages; and (4) discounting the total amount to its present value. <u>Id.</u> at 117.

In _Madore v. Ingram Tank Ships, Inc._, 732 F.2d 475 (5th Cir. 1984), the Fifth Circuit held that in the first step of the _Culver_ calculation, a plaintiff's work life expectancy should be based on statistical averages, such as those provided by the Department of Labor's work life expectancy tables, unless evidence is presented showing that a plaintiff is likely to live and work a different period of time. _Id._ at 478. As the court explained,

> **Even if retirement age for [the plaintiff] could be anticipated to be age 65, it is far from certain that, even in the absence of this injury, he would have continued to work until that time. He might have, as some workers do, decided to retire early. He might have become disabled before then as a result of illness or some other misadventure. He might have died before then. The phrase "work-life expectancy" literally reflects its meaning: the average number of years that a person of a certain age will both live and work. Such an average is not conclusive. It may be shown by evidence that a particular person, by virtue of his health or occupation or other factors, is likely to live and work a longer, or shorter, period than the average. Absent such evidence, however, computations should be based on the statistical average.**

_Id._ In _Madore_, the district court had concluded that the plaintiff would have worked until age 65 had he not been injured, but because no particularized evidence existed to contradict United States Department of Labor statistical averages assigning him a work life expectancy of fewer years, the Fifth Circuit reversed and remanded the case for further proceedings consistent

12

with its opinion.  <u>Id.</u>

Applying the foregoing principles to the facts of this case, Dr. Rice's testimony regarding Plaintiff's future lost earnings is only permissible if alternative evidence shows that Plaintiff's personal characteristics -- including his health, occupation, or other facts -- are likely to give him a longer work life expectancy than the rate provided by the Department of Labor's statistical tables.  Here, Plaintiff has expressed an intention to "present evidence at trial that he would have continued working past the average work life expectancy."[2] Because the nature of this evidence Plaintiff plans to present is not entirely clear at present, the Court deems it most appropriate to defer its ruling on this aspect of Defendant's motion at the present time.  However, Dr. Rice will not be permitted to testify regarding his future lost wage calculations based merely on his assumptions of Plaintiff's work life expectancy.  <u>Id.</u>  Nor will self-serving testimony regarding the fact that Plaintiff "intended" to work until age 70 suffice.  <u>See Lambert v. Teco Barge Line</u>, No. 06-2390, 2007 WL 2461681, at *3 (E.D. La. Aug. 23, 2007) (granting defendant's motion *in limine* to exclude plaintiff's economist from offering future lost wage calculation based on the plaintiff's testimony that "he intended

_____

[2]  Plaintiff's Memorandum in Opposition, Rec. Doc. 63, p. 2.

13

on working until his social security retirement age").[3]

**B. Dana W. Davis**

As previously noted, Defendant seeks to prevent Plaintiff's counselor, Dana W. Davis, LCSW, from testifying concerning her opinion that Plaintiff suffers from PTSD as a result of the accident at issue in this case. Plaintiff argues that Ms. Davis's professional knowledge, educational training, and experience qualify her to diagnose Plaintiff's mental condition.

Ms. Davis's qualifications principally stem from her academic training and practical experience as a licensed clinical social worker in the state of Louisiana. The practice of "social work" is defined under Louisiana law as "the professional application of social work values, theories, and interventions to one or more of the following: enhancing the development, problem-solving, and coping capacities of people; promoting the effective and humane operations of systems that provide resources and services to people; linking people with systems that provide them with resources, services, and opportunities; developing and

---

[3] Plaintiff also points out that "there is a distinction between loss of future wages and future loss of earning capacity." Plaintiff's Memorandum in Opposition, Rec. Doc. 63, p. 2. This assertion is technically correct, but Plaintiff's work life expectancy would act as a cap for either award. See Lambert, 2007 WL 2461681, at *1 ("Finally, any award given to Plaintiff for either future loss of earnings and/or loss of earning capacity, will be capped using Plaintiff's work-life expectancy as set forth by the United States Department of Labor's Bureau of Labor Statistics.").

improving social policy; and engaging in research related to the professional activities." LA. REV. STAT. § 37:2703(15)(a). This same statute goes on to provide that the practice of social work includes "clinical social work, planning and community organization, policy and administration, research, and social work education." Id.

Significantly, however, the definition of "social work" does not encompass administering or interpreting psychological tests or the diagnosis of emotional or mental disorders. To the contrary, the statutes governing the practice of social work make clear that such practices are beyond the scope of its authorized practice. See LA. REV. STAT.§ 37:2703(15)(b) ("Nothing in this Chapter shall be construed to authorize any social worker licensed, certified, provisionally certified, or registered under this Chapter to administer or interpret psychological tests, or to engage in the practice of psychology, as defined by the provisions of R.S. 37:2352(5) or to engage in the practice of medicine, as defined by the provisions of R.S. 37:1262."); LA. REV. STAT. § 37:2352(5) (defining the "practice of psychology" to include "diagnosis and treatment of mental and emotional disorder or disability" and "the psychological aspects of physical illness, accident, injury, or disability"); LA. REV. STAT. § 37:1262 (defining the "practice of medicine" to include "the diagnosing, treating, curing, or relieving of any bodily or

mental disease").

Furthermore, the Court's independent research reveals that courts within this circuit have refused to allow witnesses with qualifications similar to those of Ms. Davis to give an expert opinion on their diagnoses of mental conditions. For instance, in <u>United States v. Crosby</u>, 713 F.2d 1066 (5th Cir. 1983), the Fifth Circuit upheld the trial court's decision to exclude a counselor with a masters degree in social work as an expert in the diagnosis of PTSD. The Fifth Circuit found that the trial court had properly concluded that "PTSD was a medical diagnosis which required professional ability [the counselor] did not possess." <u>Id.</u> at 1076-77.

Similarly, in <u>Jackson v. Bayou Industries</u>, another division of this Court refused to permit a licensed professional counselor to render a PTSD diagnosis. No. 94-946, 1995 WL 143538 at *1-2 (E.D. La. Mar. 29, 1995). The <u>Jackson</u> court noted that the counselor possessed a masters degree in psychology and had taken one formal course and one afternoon seminar in Diagnostic Statistical Manuals, but found that this training failed to adequately qualify her as an expert in the diagnosis of PTSD. <u>Id.</u>

Finally, in <u>Lee v. National Railroad Passenger Corp. (Amtrak)</u>, the court held that a licensed social worker who had taken continuing education courses on PTSD nonetheless lacked the

16

qualifications necessary to diagnose the plaintiff's mental
condition.  No.  3:10-CV-00392, 2012 WL 92363, at *2-3 (S.D.
Miss. Jan. 11, 2012).  Although the social worker was currently
treating approximately 10 other patients who reportedly suffered
from PTSD, and had given at least five depositions regarding such
patients, the court reasoned that "treating someone for PTSD is
an altogether different matter than diagnosing it." Id. at *3;
see also Hall v. United Ins. Co., 367 F.3d 1255, 1261 (11th Cir.
2004)(upholding trial court's exclusion of licensed professional
counselor's testimony that decedent was incompetent, finding that
the plaintiff had not shown that "counselors with similar
training are qualified to render an opinion as to an individual's
mental capacity"); Carlson v. Banks, 2007 WL 5711692, at *11
(N.D. Ill. Feb. 2, 2007) (noting plaintiff's concession that PTSD
was a medical diagnosis that licensed professional counselor was
unqualified to make); Blackshear v. Werner Enters., Inc., No.
2004-4-WOB, 2005 WL 6011291, at *2-3 (E.D. Ky. May 19, 2005)
(finding that licensed clinical social worker was not qualified
to diagnose psychological disorders such as PTSD); State v. Lee,
502 A.2d 332, 335 (R.I. 1985)("[C]ourts have required that PTSD
be proven through expert medical testimony by licensed physicians
or psychiatrists."); State v. Willis, 888 P.2d 839, 847 (Kan.
1995) ("[F]or a witness to qualify as an expert on post-traumatic
distress disorder and rape trauma syndrome, the witness must

possess special training as an expert in that field of psychiatry
. . . A clinical social worker with a masters degree in social
work falls well below that mark.").

Here, based on Ms. Davis's stated qualifications, as well as
the foregoing authority, the Court finds that she lacks the
requisite qualifications necessary to diagnose Plaintiff's
psychological condition or to render an opinion on the medical
cause of that condition. As such, she will not be permitted to
testify on these matters.

However, based on the extended period of time over which she
counseled and observed Plaintiff, she is competent to testify as
a lay witness regarding her observations during the course of
treatment and the duration of any symptoms Plaintiff exhibited,
to the extent such is otherwise allowable under the Federal Rules
of Evidence. See Jackson, 1995 WL 143538, at *2 ("[T]he Court
will allow the witness to testify concerning her interviews with
plaintiffs, any behavioral characteristics she observed during
these interviews, and the course of counseling she used with
plaintiffs."); Lee, 2012 WL 92363, at *3 ("Of course, this does
not prevent [the expert] from testifying about other matters
related to her treatment of [the plaintiff], such as the number
of times that she visited with [the plaintiff], the symptoms he
reported and exhibited, and the length of time over which those

symptoms persisted.").[4]

**CONCLUSION**

Accordingly, for the reasons expressed above, **IT IS ORDERED**
that Defendant Elevating Boats, L.L.C.'s **Motion *in Limine***
**Regarding Plaintiff's Experts, G. Randolph Rice, Dana W. Davis,**
**and Geoff Webster (Rec. Doc. 58)** is **GRANTED IN PART**, as provided
below:

With respect to Dr. Rice's testimony concerning the past and
future valuation of meals alleged to have been provided to
Plaintiff, the motion is **GRANTED AS UNOPPOSED.** However, as
explained above, the Court will defer its ruling with respect to
Dr. Rice's calculations regarding Plaintiff's future lost wages.

With regards to the testimony of Dana W. Davis, the motion
is **GRANTED.** Ms. Davis will not be allowed to testify regarding
her diagnosis of Plaintiff's mental condition or of the medical
cause of this condition.

With respect to Geoff Webster, the motion is **GRANTED AS**

---

[4] To the extent that Plaintiff now requests leave to retain
a new expert to testify regarding Plaintiff's mental condition
less than a week before trial, that request is denied. Since the
time that <u>Daubert</u> was decided, parties have been placed on clear
notice of the standards of reliability that must be met before
expert testimony will be admitted. "[F]airness does not require
that a plaintiff, whose expert witness testimony has been found
inadmissible under <u>Daubert</u>, be afforded a second chance to
marshal other expert opinions and shore up his case . . ."
<u>Nelson v. Tenn. Gas Pipeline Co.</u>, 243 F.3d 244, 250 (6th Cir.
2001).

**UNOPPOSED**.  Mr. Webster will not be permitted to testify at trial.

New Orleans, Louisiana this 11th day of May, 2012.

_____
CARL J. BARBIER
UNITED STATES DISTRICT COURT