```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA

LARRY NAQUIN, SR.                              CIVIL ACTION

VERSUS                                         NO: 10-4320

ELEVATING BOATS, LLC, ET AL                    SECTION: J(4)
```

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* (**Rec. Doc. 254**) filed by Third-Party Defendant, State National Insurance Company ("SNIC"), an *Opposition* (**Rec. Doc. 263**) by Defendant and Third-Party Plaintiff, Elevating Boats, LLC ("EBI"), and SNIC's *Reply* (**Rec. Doc. 274**). Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **GRANTED.**

## PROCEDURAL AND FACTUAL BACKGROUND

This matter derives from a claim filed by Plaintiff, Larry Naquin ("Plaintiff"), pursuant to the Jones Act against his previous employer, Elevating Boats, LLC ("EBI").[1] Plaintiff alleged that during the course of his employment, while operating a lift crane owned by EBI, the pedestal of the crane snapped, causing the crane to topple over. As a result of the accident, Plaintiff alleges that he sustained injury to both his left ankle and right

---

[1] For a detailed description of the facts comprising Plaintiff's Jones Act claim, please see this Court's previous Order and Reasons denying EBI's Motion for Summary Judgment on January 3, 2012. (Rec. Doc. 51).

1

heel, which required surgery. Plaintiff filed suit against EBI on November 15, 2010, asserting claims under the Jones Act, and in the alternative, reserving his claims and benefits under the Longshore and Harbor Workers Compensation Act. Plaintiff also sued Techcrane, International, L.L.C. ("Techcrane"), a company believed by Plaintiff to work with EBI to supply, design, and/or construct EBI cranes. The Court granted summary judgment in favor of Techcrane, dismissing all Plaintiff's claims against it, and Plaintiff's claims against EBI proceeded to trial.

After a three-day jury trial on the merits, the jury rendered a verdict in favor of Plaintiff, finding EBI liable to Plaintiff in the amount of $2,463.842.00 with interest.[2] (Rec. Doc. 164). EBI subsequently appealed this Court's judgment to the Fifth Circuit. On appeal, the Fifth Circuit affirmed the jury's verdict in regards to liability, finding that the jury correctly determined that Plaintiff qualifies as a Jones Act seaman and that EBI acted negligently in failing to provide a reasonably safe work environment and work equipment. *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 932-38 (5th Cir. 2014). However, the Fifth Circuit vacated the verdict as it relates to damages and remanded the

---

[2] In the original judgment the jury determined the amount of damages to be $2,560,000.00. (Rec. Doc. 118). However, after considering the jurors' answers to interrogatories propounded by the Court at the conclusion of the trial, as well as the parties' joint motion to amend the Court's judgment regarding damages, the Court amended its judgment to impose damages in the amount of $2,470,400.00. The Court amended its damages award a second and final time to reflect a second joint motion by the parties to amend the judgment and impose damages upon EBI in the amount of $2,463,842.00.

matter to this Court to conduct a new trial on the issue of damages. *Id.* at 938-941.

This Court subsequently granted EBI leave to file a third-party complaint against its insurance companies, SNIC and Certain London Insurers ("London Insurers"). EBI then filed this complaint on August 28, 2014, alleging that by denying EBI's insurance claims arising from Plaintiff's accident and failing to provide EBI with defense and indemnity, both SNIC and London Insurers breached their insurance contracts. (Rec. Doc. 200). As such, both SNIC and London Insurers were brought into the litigation as third-party defendants. The Court then granted a motion to sever filed by SNIC and joined by London Insurers, and ordered that EBI's claims against SNIC and London Insurers be severed from the remaining issue of damages, to be resolved by a separate trial.

SNIC then filed the instant motion seeking summary judgment in its favor and dismissal of EBI's claims. SNIC asserts that it has not breached its insurance contract nor acted in bad faith, because EBI was not entitled to coverage under the Protection and Indemnity ("P&I") Policy, which was issued to it by SNIC. Specifically, SNIC contends that the P&I Policy's coverage did not extend to the land-based incident in question and also that EBI failed to comply with the requisite notice requirements imposed by the policy.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the

3

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in

4

favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### A. Scope of Coverage

SNIC argues that summary judgment on EBI's claims is appropriate because there is no genuine issue that the scope of coverage of the P&I Policy did not extend to EBI's liability for the incident at issue. In response, EBI first argues that because this argument qualifies as an affirmative defense to EBI's claims, SNIC bears the burden of "adduc[ing] evidence to support each element of its defense," and "all justifiable inferences [are] to be drawn in [EBI's] favor." (Rec. Doc. 263, p. 5). However, such an argument runs afoul of the well-settled law regarding the burden of proof on summary judgment. Contrary to EBI's argument, under

5

Louisiana law, the scope of coverage of an insurance policy is not an affirmative defense, but rather an element that must be proven by the plaintiff. *Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00); 774 So.2d 119, 124 (citing *Barber v. Best*, 394 So.3d 779, 780-81 (La. App. 4 Cir. 1981)) ("When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms."). As such, at trial, the burden will fall to EBI to show that the incident for which it seeks payment falls within the scope of the coverage provided by the P&I Policy. The general rules governing summary judgment standards apply, and SNIC, as the moving party, need only show that EBI lacks sufficient evidence of coverage to support its claim.

The Court finds that SNIC has carried its burden in showing EBI's inability to prove that the coverage of the P&I Policy extended to EBI's liability for the incident at issue. The language of the "Indemnity" provision of the Policy provides as follows:

> Subject to all exclusions and other terms of this Policy, the Underwriters agree to indemnify the Assured for any sums which the Assured, *as owner of the Vessel*, shall have become liable to pay, and shall have paid in respect of *any casualty or occurrence* during the currency of the Policy, but only in consequence of any other matters set forth hereunder . . .

(Rec. Doc. 254-7, p. 16) (emphasis added). SNIC asserts that the term "as owner of the vessel" limits the coverage of the policy to liability for incidents related to EBI's activity as owner of a

6

vessel. Because the incident for which EBI seeks coverage was land-based, having occurred when a crane (located on land) toppled over while transporting material from a tractor-trailer (located on land) to a wall of a building (also located on land), SNIC contends that the policy's coverage does not apply. In response, EBI argues that the language of the policy should not be read to limit coverage only to incidents arising from EBI's conduct as owner of a vessel. Instead, EBI relies on the term "any casualty or occurrence," to stand for the proposition that the policy covers any incident for which EBI may be found liable, regardless of whether this occurred during its role as a vessel owner or otherwise.

The issue of whether an insurance policy excludes or provides coverage, "as a matter of law, is an issue that can be resolved within the framework of a motion for summary judgment." *Sumner v. Mathes*, 10-0438 (La. App. 4 Cir. 2010); 52 So.3d 931, 935 (citing *Franques v. Jones*, 06-1177 (La. App. 4 Cir. 2007); 961 So.2d 1253, 1255. Louisiana law provides that "an insurance policy is a contract between the parties and should be construed using the general rules of contract interpretation set forth in the Louisiana Civil Code." *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 837 (5th Cir. 2009). "The words of a contract must be given their generally prevailing meaning." *Smith v. Am. Family Living Assur. Co. of Columbus*, 584 F.3d 212, 216 (5th Cir. 2009)

(citing LA. CIV. CODE ANN. art. 2047). When these words "are unambiguous and the parties' intent is clear, the insurance contract will be enforced as written." *Doerr*, 774 So.2d at 124 (citing LA. CIV. CODE art. 2046). Additionally, a contractual "provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective," so as to avoid rendering any provision in the contract superfluous. LA. CIV CODE ANN. art. 2049; *see also Berk-Cohen Assocs., LLC v. Landmark Am. Ins. Co.*, Nos. 07-9205, 07-9207, 2009 WL 3738152, at *2-3 (E.D. La. Nov. 5, 2009) (Vance, J.). Further, provisions of an insurance contract "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *First Am. Bank*, 585 F.3d at 837 (citing LA. CIV. CODE ANN. art 2050).

Considering these rules of interpretation, the only reasonable interpretation of the P&I Policy is that the policy's coverage is limited to EBI's liability arising from its conduct as the owner or operator of a vessel. EBI's interpretation, that the policy contains no limits regarding its conduct and applies to "any casualty or occurrence" regardless of the type of conduct causing such, would run afoul the above mentioned rules of contractual interpretation by rendering the term "as owner of the Vessel" meaningless and superfluous. Louisiana law is clear that whenever possible, interpretation of an insurance policy must be made in

8

such a way as to give effect to every part of the policy, and one provision of an insurance policy should not be construed "at the expense of disregarding other sections." *Foret v. La. Farm Bureau Cas. Ins. Co.*, 582 So.2d 989, 991 (La. App. 1 Cir. 1991); *see also Hemel v. State Farm Mut. Auto Ins. Co.*, 29 So.2d 483, 485 (La. 1947). The only way to give meaning to both provisions of this policy is to construe the policy as limiting coverage to "any casualty or occurrence" which arises out of EBI's conduct "as owner of the Vessel."

EBI argues that even if the Court were to interpret the contract as limiting coverage to conduct related to its status as vessel owner, EBI's use of the crane which caused Plaintiff injury "was undeniably close by and in support of and [sic] its fleet of vessels (i.e. loading equipment on vessels, lifting pontoons out of the water, painting legs on a vessel, taking x-ray of legs on the vessel)." (Rec. Doc. 263, p. 6). However, while the crane may have had the capability of supporting EBI's fleet of vessels, at the time of the incident, it was being used in no such way. Instead, EBI does not dispute that the crane toppled over, causing injury to Plaintiff, while it was in the process of moving material "from an eighteen-wheeler trailer on to [sic] the adjacent ground." (Rec. Doc. 263). EBI does not attempt to argue that at the time of the incident the crane was being used to support the vessel. In a factually similar case, the Fifth Circuit held that when a P&I

Policy limits coverage to the "owner of a vessel," the vessel must actually be related to the conduct resulting in injury. *Lanasse v. Travelers Ins. Co.*, 450 F.2d 580, 584 (5th Cir. 1971). In *Lanasse*, the plaintiff was injured when the operator of a platform owned by Chevron allowed a welding machine to swing against the vessel's railing. *Id.* at 582. The Fifth Circuit reasoned that:

> There must be at least some causal operational relation between the vessel and the resulting injury. The line may be a wavy one between coverage and noncoverage, especially with industrial complications in these ambiguous amphibious operations plus those arising from the personification of the vessel as an actor in a suit in rem. But where injury is done through nonvessel operations, the vessel must be more than the inert locale of the injury. Nothing more occurred here, for it was Chevron's actions as a platform operator or as a crane operator that caused the harm, and that does not make it a liability of a shipowner.

*Id.* at 584. Here, like in *Lanasse*, Plaintiff's injuries were not incurred, nor did the crane break, on or even in close proximity to a vessel. The incident in question in no way involved a vessel owned by EBI. Additionally, when this case was on appeal, the Fifth Circuit recognized that EBI was negligent because it had "designed, constructed, operated, and maintained the defective LC-400 crane, which injured Naquin." *Naquin v. Elevating Boats, LLC*, 744 F.3d 927, 936 (5th Cir. 2014). Notably absent from the Fifth Circuit's opinion is any finding that EBI should be held liable due to its status as a vessel owner. Due to the fact that there appears to be no relation to EBI's ownership of vessels and its operation of the defective crane, the evidence does not support a finding that the

10

P&I Policy's coverage extends to EBI's liability.

In a final attempt to support its argument that the P&I Policy coverage extended to the incident at issue, EBI argues that SNIC was required to provide EBI with actual notice that the policy limited coverage to EBI's conduct as owner of a vessel. However, actual notice *was* provided to EBI, through the clear wording of the policy. EBI relies only on the case of *Holland v. Golden Rule Ins. Co.*, 96-264 (La. App. 3 Cir. 10/9/96); 688 So.2d 1186 in support of its argument that actual notice was required. In *Holland*, the Court recognized that limitations on coverage contained in insurance policies "must be free of ambiguity and sufficiently understandable to any given insured that it may be said that, in entering into the agreement containing such limitation, he understood and consented to such limitation." *Id.* at 1188. Nowhere in this opinion does the court make any mention of a requirement that actual notice beyond the language included in the terms of the policy be given to the insured. Instead, Louisiana law is well-settled that an insured bears the duty of reading and knowing the terms of his insurance policy. *See Urban Planning and Innovations, Inc. v. Alexander & Sanders Ins. Specialist*, No. 07-7537, 2008 WL 191328, at *1 (E.D. La. Jan. 22, 2008) (Barbier, J.) (citing *Stephens v. Audubon Ins. Co.*, 27,658 (La. App. 2 Cir. 12/6/95); 665 So.2d 683, 686); *see also Marketfare Annunciation v. United Fire and Cas. Ins. Co.*, No. 06-7232, 2007 WL 2007986, at *2 (E.D. La. Jul. 10, 2007) (Barbier,

J.) ("It is well-settled that an insured is presumed to know the terms of his insurance policy."). Here, a reasonable insured entering into the P&I policy would have expected that coverage was limited to liability arising from its conduct as a vessel owner. The Court finds the language of the policy to be sufficiently clear as to give notice regarding the limitation of the coverage. EBI's unreasonable failure to understand this does not create a requirement that SNIC provide it with actual notice of the terms of the policy.

## B. Bad Faith

In its third-party demand, EBI also contends that SNIC acted in bad faith by breaching the P&I Policy and refusing to defend and indemnify EBI regarding Plaintiff's claims. However, under Louisiana law, it is well-settled that in order for a claim of statutory bad faith to survive, it must be based on a valid underlying claim. *Matthews v. Allstate Ins. Co.*, 731 F.Supp.2d 552, 566 (E.D. La. 2010) (Fallon, J.) (citing *Moffett v. Allstate Indem. Co.*, No. 07-6217, 2008 WL 50829202, at *4 (E.D. La. Nov. 25, 2008) (Lemmon, J.)). Because, as previously determined, the P&I Policy's coverage did not extend to EBI's liability associated with the defective crane, SNIC did not breach the insurance policy by failing to make payment on EBI's claims. As such, EBI's claim for bad faith must be dismissed as it is not based on a valid claim for breach of contract.

Because summary judgment is appropriate on EBI's claims for breach of contract and bad faith, it is unnecessary to address SNIC's arguments regarding prescription and EBI's alleged breach of the Conditions of the P&I Policy.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion for Summary Judgment* **(Rec. Doc. 254)** is **GRANTED**.

**IT IS FURTHER ORDERED** that EBI's claims against Third-Party Defendants, SNIC and London Insurers,[3] in the above-captioned matter are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 18th day of March, 2015.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[3] Although London Insurers has not joined in this motion, after consideration of the insurance policy issued by London Insurers to EBI (Rec. Doc. 228-1), it appears to the Court as though the policy is an excess insurance policy which follows the form of the terms and conditions of SNIC's underlying P&I Policy. Because EBI's liability does not fall within the scope of the P&I Policy coverage, London Insurers' policy is not implicated, and therefore, London Insurers did not breach this insurance policy or act in bad faith by failing to provide benefits.